Filed 7/14/26  Schafer v. Smith CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JAMES SCHAFER et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>VERONICA SMITH et al.,<br><br>    Defendants and Respondents. | A173331<br><br>(Marin County<br>Super. Ct. No. CIV2301286) |

James and Donna Schafer (the Schafers) filed a complaint requesting declaratory and injunctive relief against their neighbors, Veronica and George Smith (the Smiths).  At issue in the lawsuit was a border fence constructed by the Smiths that allegedly interfered with the useability of a driveway easement providing access to the Schafers' Marin County home.  A bench trial produced mixed results for both sides.

The court found that, although the Smiths "intentionally placed the fence within the area covered by the driveway easement" in willful violation of a set of neighborhood covenants, conditions, and restrictions (CC&Rs), their placement of "a fence along the border of the paved driveway does not meaningfully restrict the ability of cars to use or access the driveway." Based on that finding, the court ruled for the Smiths on nuisance and easement interference claims, and declined to issue injunctive relief.

1

But the court granted limited declaratory relief to the Schafers. Granting in part the Schafers' request for declaratory relief, it announced that "[u]nder the terms of the . . . CC&Rs, the Schafers may lawfully seek to use the driveway easement (notwithstanding the presence of the fence) . . . should it become reasonably necessary for driveway purposes, such as, for example, the repair or maintenance of the driveway, or widening the driveway to comply with local . . . regulations."

On appeal from the ensuing judgment, the Schafers argue that the trial court abused its discretion by effectively extinguishing a portion of their driveway easement. They also contend that the court erred as a matter of law by failing to recognize that the CC&Rs require the issuance of an injunction once a CC&R violation is found, as it was here. We see no merit in the appeal and will affirm.

## I. BACKGROUND

### A. *The Parties, the Properties, and the Driveway Easement*

The Schafers (through a trust) and the Smiths own adjacent residential lots with a shared boundary line. Both properties are in the Kent Woodlands subdivision in Marin County and are subject to CC&Rs binding on all property owners in the Kent Woodlands Property Owners Association (KWPOA). The Schafers and the Smiths are members of the KWPOA.

A reciprocal 20-foot-wide easement strip runs the length of the shared boundary line between the Smiths' and the Schafers' respective properties. Within this 20-foot zone, the Smiths benefit from a 10-foot-wide easement on the Schafers' property and the Schafers benefit from a 10-foot-wide easement on the Smiths' property.

The easements were recorded on the subdivision map in 1957 and labeled as "Driveway Easement." A previous owner of the Schafer property

installed a paved driveway within the easement strip, leading to the Schafers' home. (The Smiths enter their residence from a separate entry point.) A small area of the paved driveway falls within the Schafers' easement on the Smiths' property.

In June 2021, the Smiths constructed a fence on their property bordering the paved driveway, running 60 linear feet within the Schafers' easement. The Smiths constructed this fence without prior approval from the KWPOA. The KWPOA issued a stop work order to the Smiths near the end of their construction project. The Smiths ignored the stop work order, finished constructing the fence, and requested retroactive approval for construction of the fence from the KWPOA.

The KWPOA declined to grant approval, found that the Smiths had violated the CC&Rs by failing to seek advance approval for construction of the fence, and ordered the Smiths to pay a $100 fine. (It did not address whether the fence unreasonably interferes with the Schafers' use of their driveway easement.) The Smiths paid the fine and the fence remains in place.

In May 2023, the Schafers filed a complaint against the Smiths alleging four causes of action: (1) nuisance, (2) declaratory relief, (3) injunctive relief, and (4) interference with easement.

## B. *The Trial Court's Decision*

After a September 2024 bench trial, which included a judicial site visit at the conclusion of testimony, the trial court issued a statement of decision finding that the Schafers were (1) unable to prove nuisance or interference with easement and (2) not entitled to injunctive relief, but (3) were entitled to limited declaratory relief. Its reasoning was as follows.

First, the trial court found that "[w]hile the fence extends in part into the driveway easement burdening the Smith property, it does not intrude

3

upon the paved concrete driveway the Schafers use to access their residence" and thus that the Schafers failed to prove private nuisance or interference with the easement.

Second, the trial court declared that "the Schafers retain an enforceable right to use the driveway easement notwithstanding the presence of the fence" and that, should it become reasonably necessary in the future, the Schafers may seek compelled removal of the fence so they may use the easement in its entirety for repair or to comply with regulatory requirements.

Third, the trial court ruled that, having failed to prove nuisance or interference with their easement rights, the Schafers were not entitled to injunctive relief. The court also denied the Schafers' alternative basis for requesting injunctive relief—that the Smiths' violation of the CC&Rs mandated the issuance of an injunction.

Properly interpreted, the court concluded, Article XI, Section 1 of the CC&Rs simply provides permissive authority to issue an injunction and does not displace the court's equitable power to decide whether injunctive relief is warranted on the facts presented. The court "considered all the facts [and] circumstances and [found] that injunctive relief is not necessary and appropriate in this case."

Having reached these findings and conclusions, the court noted that its statement of decision "provided mixed relief" to the parties, but deemed their respective requests to be deemed the prevailing party premature in advance of posttrial motions for costs and fees. Following entry of judgment, the parties renewed their respective requests to be designated the prevailing party, filing post-judgment cross-motions seeking an order to that effect. The court denied both motions.

4

The Schafers filed a timely appeal from the judgment.

## II. DISCUSSION

### A. *Standard of Review*

The Schafers argue that, on the undisputed facts, the court abused its discretion as a matter of law in refusing to enter an injunction. They ask us to conduct de novo review of this ruling. The Smiths counter that the trial court's factual finding that their fence does not unreasonably or substantially interfere with the Schafers' easement rights should be reviewed for substantial evidence, and that, to the extent the court's declaratory and injunctive relief rulings are premised on matters of law, those rulings may be reviewed de novo but must be affirmed as correct. The Smiths have it largely right.

Abuse of discretion is, of course, the overall rubric we must apply, but under the broad umbrella of abuse of discretion there are nuanced differences in the intensity of our review. We credit a trial court's discretionary choices within the framework of applicable law; we give deference to findings of fact that are supported by substantial evidence; and we always stand ready to review de novo the court's application of the law. (*Friends of South Fork Gualala v. Department of Forestry & Fire Protection* (2024) 106 Cal.App.5th 1180, 1195–1196.) So long as the trial court correctly applies the law, any choice it makes within the range of its legally permitted discretion may be overturned only if there is an indication the choice was arbitrary or beyond the bounds of reason. (*Ibid.*)

In this case, these layers of review apply as follows. We conduct de novo review in addressing the Schafers' claim that their easement rights were effectively extinguished, since that contention turns on whether the court correctly applied the governing law of easements. We review for substantial evidence the court's factual finding that there was no

5

substantial or unreasonable interference with the Schafers' driveway easement. And generally, we review the denial of injunctive relief for whether the court's exercise of its remedial authority was within the range of discretion allowed by applicable law, but as part of that analysis we review the court's interpretation of the CC&Rs de novo.

**B.** ***The Trial Court's Judgment Did Not Result in an Extinguishment of the Schafers' Easement Rights***

The Schafers' primary argument, and the central issue in this appeal, is whether the trial court correctly understood and applied *Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697, 703 (*Scruby*). According to the Schafers, the controlling authority is *Cottonwood Duplexes, LLC v. Barlow* (2012) 210 Cal.App.4th 1501 (*Cottonwood*), which makes clear that *Scruby* cannot be applied in a manner that "effectively extinguish[es] a substantial portion of a recorded easement." We reject the premise of the argument—that the trial court's ruling in this case "effectively extinguishes" anyone's rights—and conclude that the court correctly understood and applied *Scruby*.

**1.** ***Scruby v. Vintage Grapevine, Inc.***

The trial court's finding that there was no substantial interference with the use and enjoyment of the Schafers' property—which is an element of a nuisance cause of action—was dispositive of their nuisance claim as well as their claim of interference with easement rights. The court's rejection of both claims turned on its analysis of the respective nonexclusive rights of servient and dominant tenement holders to an easement. (See Civ. Code, § 803 [defining servient and dominant tenements in an easement].) In the context we have here, the Smiths are the servient tenement holders and the Schafers are the dominant tenement holders to the disputed easement. Because the court's easement analysis drew on principles enunciated in

6

*Scruby*, the main issue in this appeal boils down to whether it properly applied the holding in that case. We conclude that it did.

In *Scruby*, appellant Scruby brought an action for declaratory and injunctive relief to resolve an easement dispute with Vintage Grapevine, Inc. (Grapevine), the owner of a winery on adjacent property. (*Scruby*, *supra*, 37 Cal.App.4th at p. 700.) That case, like this one, involved deeded rights to a nonexclusive easement running along the border of the parties' adjacent properties. (*Id*. at pp. 700–701.) "By the grant of this easement, Scruby's land became the dominant tenement and the Grapevine property became the servient tenement." (*Id*. at p. 701.) Scruby alleged certain aspects of Grapevine's winery operations (placement of some tanks and the location of some grapevines) interfered with Scruby's ability to use the 52-foot-wide easement for its intended purpose—ingress and egress to his lot. (*Ibid*.) The trial court denied relief, finding that there was no unreasonable interference with Scruby's easement rights. (*Id*. at pp. 701–702.)

In affirming, the appellate panel in *Scruby* began with an in-depth review of certain "controlling principles" in the law of easements (*Scruby*, *supra*, 37 Cal.App.4th at pp. 702–703), starting with the definition of an easement as something less than fee ownership. " 'An easement is a restricted right to specific, limited, definable use or activity upon another's property, which right must be *less* than the right of ownership.' " (*Id*. at p. 702.) Much depends on the scope of the easement at issue, the court explained. Where a dominant tenement holder enjoys the right to use "an easement limited to roadway use grants a right of ingress and egress and a right of unobstructed passage to the holder of the easement[,]" the "roadway easement does not include the right to use the easement for any other purpose." (*Id*. at p. 703.)

7

Under the principles outlined in *Scruby*, in any clash between dominant and servient tenement holders over nonexclusive use rights to an easement, the servient tenement holder—who, after all, is the fee owner of the underlying land—has a natural advantage. "Every incident of ownership not inconsistent with the easement and the enjoyment of the same is reserved to the owner of the servient estate." (*Scruby*, *supra*, 37 Cal.App.4th at p. 702.) "The owner of the servient estate may make continued use of the area the easement covers so long as the use does not 'interfere unreasonably' with the easement's purpose." (*Id.* at pp. 702–703.) Bearing this starting point in mind, there is always a zone of potential conflict in the case of a nonexclusive easement. "When the easement is 'nonexclusive' the common users 'have to accommodate each other[,]' " the *Scruby* court explained. (*Id.* at p. 703.)

On the one hand, "[t]he owner of the dominant tenement must use his or her easements and rights in such a way as to impose as slight a burden as possible on the servient tenement." (*Scruby*, *supra*, 37 Cal.App.4th at p. 702.) On the other hand, despite the generally free hand a fee owner has in using its own property, an obstruction by the servient tenement holder which "unreasonably interferes with the use of a roadway easement can be ordered removed 'for the protection and preservation' of the easement." (*Id.* at p. 703.) Of particular note for our purposes, the applicable standard of review is specific. "Whether a particular use by the servient owner of land subject to an easement is an unreasonable interference with the rights of the dominant owner is a question of fact for the trier of fact, and its findings based on conflicting evidence are binding on appeal." (*Ibid.*)

Turning to the application of these principles, the *Scruby* court's analysis was straightforward. It first upheld the trial court's finding that

8

the scope of the easement at issue there, though 52 feet wide, "was limited to an easement of ingress and egress to and from the property." (*Id.* at pp. 703–704.) It then rejected Scruby's argument that "Grapevine has encroached on their easement by using it for agricultural equipment, planting of grapevines, and other winery-related uses." (*Id.* at p. 706.) On this issue, it concluded that "Scruby has *not* been granted the right to exclusive use of each and every square inch of the easement area." (*Ibid.*) "Rather," the court held, "Grapevine may make continued use of the easement area although it may not do anything that unreasonably interferes with Scruby having access to their property." (*Ibid.*) And since substantial evidence supported the trial court's finding that "Grapevine's use of the easement area had not unreasonably interfered with Scruby's right of ingress and egress" (*ibid.*), the appellate panel affirmed.

In this case, the trial court's application of *Scruby* was also straightforward. First, it found that the express purpose of the easement was for a driveway. Then it reviewed the evidence and found no unreasonable interference with that purpose. Similar to the water tanks and the grapevines in *Scruby*, the Smiths' fence was placed along the border of the paved surface within the driveway easement. After reviewing all of the evidence and visiting the site, the trial court found that "having a fence along the border of the paved driveway" does not constitute an unreasonable interference with the Schafers' ability to use their driveway. We see no reason to disturb that finding.

In an effort to persuade the trial court that it should find for them on the issue of unreasonable interference with their easement rights, the Schafers argued that, (i) to allow a full turning radius while using the driveway, (ii) for purposes of maintenance, and (iii) in anticipation that

9

county authorities might someday require widening of the driveway to comply with applicable environmental regulations, they are entitled to have uninhibited use of the full 20-foot width of the easement area on the border of the two properties.

The court considered and rejected the turning radius argument, which was based on Mrs. Schafer's testimony. In view of all of the evidence presented at trial as well as its own observations during a site visit, the court found Mrs. Schafer's testimony on this point to be unpersuasive. And as for the Schafers' arguments about maintenance and road widening, it rejected those claims as speculative prognostications that did not prove any current interference. On all three points, the court relied on assessments of the evidence that were solely within its province to undertake and that we will not second-guess.

### 2. *Cottonwood Duplexes, LLC v. Barlow*

In a footnote, the *Scruby* court observed that "[n]o pro tanto extinguishment of the granted easement results from [our] decision which determines that Grapevine's current use of a portion of the easement does not interfere with Scruby's right of ingress and egress to their property as presently developed." (*Scruby*, *supra*, 37 Cal.App.4th at p. 706, fn. 2.) *Cottonwood*, a later case involving a dispute over a nonexclusive easement running along the border of adjoining properties, picked up on this footnote (*Cottonwood*, *supra*, 210 Cal.App.4th at p. 1508), and held that what the trial court did in that case—it permanently reduced the easement area by half, without any evidence of abandonment—partially extinguished the dominant tenement holder's easement rights. (*Id*. at pp. 1506–1510.)

The Schafers contend that, in this case, the trial court did the same thing. According to them, by declining to order the removal of the Smiths' fence, the court effectively extinguished a portion of their easement rights.

10

We disagree, as a close examination of *Cottonwood* will show. That case involved a dispute between a subdivision developer, Cottonwood Duplexes, LLC (Cottonwood) and Barlow, the owner of a lot to the north of the subdivision that Cottonwood wished to develop. (*Cottonwood, supra,* 210 Cal.App.4th at pp. 1503–1505.) The easement in dispute was created long before the subdivision map was filed and long before Cottonwood acquired ownership of and developed a plan to build the 16 lots it owned. (*Ibid*.) The easement granted Barlow driveway use to a road known as Gatchett Lane, a 60-foot-wide lane that ran 207 feet along the length of the southern boundary of Barlow's property. (See *id*. at p. 1503 [width]; *id*. at p. 1515, appen. D [length].)

At the time the easement was granted, Gatchett Lane was the sole access road to Barlow's lot. (*Cottonwood, supra,* 210 Cal.App.4th at pp. 1512–1513, appens. A & B.) But things changed over time. The original developer of the subdivision, Cottonwood's predecessor, built three new roads to serve as access points for all lots in the subdivision, including Cremia Place. (*Id*. at p. 1504.) And by the time the dispute between Cottonwood and Barlow arose, Cremia Place provided an entry point to Barlow's property in addition to Gatchett Lane. (*Id*. at p. 1514, appen. C.)

The tract map for the subdivision included a note stating that no development would occur within the area of the Gatchett Lane easement—which crossed four of the lots on the map—until the easement was quitclaimed or its area reduced to 15 feet along the northern property line of several lots Cottonwood wanted to develop. (*Cottonwood, supra,* 210 Cal.App.4th at p. 1504.) All lot owners whose property the easement crossed agreed to quitclaim their easement rights to in accordance with that condition, except Barlow. (*Id*. at p. 1505.)

11

When Cottonwood arrived on the scene, it offered Barlow $30,000 to cede his easement rights, but he refused. (*Cottonwood, supra,* 210 Cal.App.4th at p. 1505.) In effort to deal with the lone holdout, Barlow, Cottonwood sued, seeking to quiet title to all but a portion of Gatchett Lane, 15 feet in width and 107 feet in length. (*Ibid.*) In support of this claim, it argued that, given the evolution of development within the subdivision and the building of a new road providing access to Barlow's property, Barlow no longer needed to use the entirety of Gatchett Lane, so the court should quiet title in a manner that permitted Cottonwood to proceed with development of its lots on the southern border of Gatchett Lane. (*Ibid.*)

In reliance on *Scruby*, the trial court ruled for Cottonwood, accepting the argument that " 'the reasonable use requirements of the Barlow Parcel both presently and in the future do not require the full size and scope of the Gatchett Lane easement.' " (*Cottonwood*, *supra*, 210 Cal.App.4th at p. 1506.) In essence, the trial court ruled that nearly half of Barlow's easement rights, in width and length, could be ordered extinguished— permanently, by quieting title—because, in its view, Barlow no longer needed them. (*Ibid.*) And it so ordered. (*Id.* at p. 1503 ["the trial court narrowed and shortened a road and utility easement"].)

Concluding that the trial court had misread *Scruby,* the Court of Appeal held that Barlow was within his rights to insist on the preservation of his easement rights, whether he was presently using them or not. "[T]here was no evidence Barlow intended to abandon any part of the easement Gatchett granted him[,]" the panel pointed out. (*Cottonwood*, *supra*, 210 Cal.App.4th at p. 1509.) In an effort to defend the trial court's ruling, Cottonwood pointed to *Scruby*'s reference to a dominant tenement holder's obligation to use its easement in manner that minimally burdens

12

the servient tenement holder. (*Id*. at pp. 1508–1509.) But according to the *Cottonwood* panel, "[t]he legal principles applied in *Scruby* cannot be logically 'extended' to sanction the *extinguishment* of a granted easement, either in whole or in part, against the will of the easement owner." (*Id*. at p. 1509.)

"Because *Scruby* did not consider whether a court can partially extinguish a granted easement if the evidence shows that the owner of the dominant tenement does not reasonably need, either now or in the future, the entirety of the easement, *Scruby* is not authority for the proposition that a court has such power[,]" said the *Cottonwood* court. (*Cottonwood*, *supra*, 210 Cal.App.4th at p. 1508.) "Neither *Scruby* nor any of the legal principles on which the Court of Appeal relied in *Scruby* dealt with, let alone authorized, *extinguishment* of a granted property right just because, in the court's view, the owner of that right does not appear to need it, either now or in the future. *Scruby* dealt with the scope of *use* of an easement, not its continued *existence*." (*Id*. at p. 1509, original italics.)

*Cottonwood* is distinguishable. This case, like *Scruby*, involves a ruling addressing the use of an easement, not its continued existence. We reject the Schafers' effort to convince us that the trial court here made the same error that the trial court made in *Cottonwood*. Nothing in the trial court's statement of decision, or in the legal effect of its judgment—as shown by the fact that, unlike the trial court in *Cottonwood*, it did not enter a quiet title remedy—declares the continued existence of anyone's easement rights to be at an end. Quite to the contrary, as shown by the Solomonic character of the declaratory relief it awarded, the court confirmed the continued existence of the full width of the easement the Schafers claim and permitted

13

them to seek removal of the Smiths' fence in the future if circumstances should so warrant.

In the end, the Schafers resort to the argument that, if we affirm, we will be endorsing bad policy that allows servient owners to "unilaterally seize" portions of easements and extinguish a dominant owner's easement rights. But an appeal to the equities is not enough to win the day for them. It is certainly true, as the trial court acknowledged, that the Smiths have not shown themselves to be models of neighborliness. In the trial court's recounting of the evidence, they come across as unrepentant scofflaws. But as property owners, the Smiths were within their rights to build their fence and are within their rights to keep it in place—unless and until the fence can be shown to interfere unreasonably with the Schafers' rights to use the driveway easement for its intended purpose. The problem for the Schafers is that, on this record, that degree of interference was not proved.

## C. *The Trial Court Properly Denied Injunctive Relief*

"The grant or denial of a permanent injunction rests within the trial court's sound discretion and will not be disturbed on appeal absent a showing of a clear abuse of discretion." (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 390.)

The Schafers argue that the trial court abused its discretion by denying injunctive relief because the language of the CC&Rs entitled them to an injunction. The Smiths contend that the trial court was correct in its interpretation of the CC&Rs. Specifically, the trial court found that the language of the CC&Rs made the authorization of an injunction permissive and not mandatory. We review the court's interpretation of the CC&Rs de novo. (*Eisen v. Tavangarian* (2019) 36 Cal.App.5th 626, 635.)

The pertinent language of the CC&Rs is as follows: "Section 1. Remedy at Law Inadequate. Except for the nonpayment of any Assessment,

14

it is hereby expressly declared and agreed that the remedy at law to recover damages for the breach, default or violation of any of the covenants, conditions, restrictions, limitations, reservations, grants of easements, rights, rights-of-way, liens, charges or equitable servitudes contained in this Declaration are inadequate and that the failure of any Owner, tenant, occupant or user of any Lot to comply with any provision of the Governing Documents may be enjoined by appropriate legal proceedings instituted by any Owner, the Association, its officers or Board of Directors, or by their respective successors in interest."

The trial court was correct to conclude that "may" means "may." As is apparent from the CC&Rs, by their terms, they declare that damages are inadequate to remedy a breach and state that an injunction may not be denied because damages relief is available. By so providing, the CC&Rs depart from a basic equitable principle that sometimes justifies *denial* of injunctive relief. (See *Department of Fish & Game v. Anderson-Cottonwood Irrigation Dist.* (1992) 8 Cal.App.4th 1554, 1565 [" 'an injunction is an unusual or extraordinarily equitable remedy which will not be granted if the remedy at law (usually damages) will adequately compensate the injured plaintiff' "].) But whatever private parties agree upon, a court's power to *grant* an injunction is a matter of judicial discretion that cannot be controlled or displaced by contract.

In this case, the trial court found that the Smiths deliberately violated the CC&Rs by failing to seek advance approval for the construction of their fence. The language of the CC&Rs certainly entitled the Schafers to seek an injunction as a remedy for the violation, but the ultimate decision about whether to grant injunctive relief was within the trial court's discretion. And in exercising its discretion, the issue of adequacy of money damages

15

had nothing to do with the court's decision to deny injunctive relief. The Schafers cite various cases for the proposition that an exercise of discretion resting on an error of law is a reversible abuse of discretion, but we see no legal error. The trial court's decision to grant declaratory relief confirming the Schafers' easement rights, while denying injunctive relief for a fence encroachment that it found did not interfere with the Schafers' ability to use the driveway easement, was well within its discretion.

The Schafers complain that the trial court did not balance the equities, as shown by the fact that it did not require the Smiths to show anything about the costs of removing the fence so that the burden to them could be balanced against the burden to the Schafers of not having access to the full width of their driveway easement. Such a balancing was unnecessary. The Schafers fail to appreciate that, as explained by *Scruby*, the Smiths, as the servient tenement holders, have the right to use their own property freely so long as they do not unreasonably interfere with the Schafers' privilege of using the driveway easement. And as we have pointed out, the trial court made an adverse factual finding against them on that issue.

Once the court found against the Schafers on the critical issue of unreasonable interference, that was the end of the matter. It was not required to go further. The Schafers cite various cases in an effort to demonstrate that the failure to conduct a balancing of the equities is, in itself, an abuse of discretion. But those cases are inapposite. A balancing of the equities is generally done when a court determines how much *a dominant tenement owner* may use the easement with the least hardship on the servient tenement owner. (6 Miller & Starr, Cal. Real Estate (4th ed. 2026) § 15:63.) That is the opposite of what we have here.

16

## III. DISPOSITION

The trial court's decision is affirmed.  The Smiths are entitled to their costs on appeal.

                                                    STREETER, J.


WE CONCUR:

BROWN, P. J.
GOLDMAN, J.